UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO:

THE FLORIDA ATLANTIC UNIVERSITY BOARD
OF TRUSTEES,

      Plaintiff,

vs.

NEIL PARSONT, individually, and OWL TUTORING,
INC., a Florida corporation,

      Defendants.

_____/

## COMPLAINT

Plaintiff, THE FLORIDA ATLANTIC UNIVERSITY BOARD OF TRUSTEES ("Plaintiff" or "FAU"), by and through its attorneys, hereby files this lawsuit against Defendants, NEIL PARSONT ("Parsont") and OWL TUTORING, INC. ("Owl Tutoring") (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1.    Since 1964, FAU has used a distinct color scheme and owl theme in connection with the provision, offering, marketing, advertising, and promotion of its educational services (the "Marks"), and by doing so, has developed a brand identity and enforceable trademark and trade dress rights.

2.    Defendants have intentionally adopted and are using a company name, domain name, color scheme, and owl theme that is identical or confusingly similar to FAU and have intentionally caused confusion, false association, and misunderstanding among consumers that

1

Defendants' services are part of the same services or affiliated with FAU (the "Infringing Marks").

3.      In a continued orchestrated effort to deceive consumers, and specifically FAU's students, Defendants request that students provide their unique FAUNet IDs **and passwords** used to access FAU's secured systems knowing that FAU prohibits students from providing this information to any person or permitting any other person to use accounts granted solely to them.

4.      Requiring students to provide their FAUNet credentials serves no purpose other than to create the false appearance that Defendants are associated or affiliated with FAU and lure FAU students into utilizing Defendants' services.

5.      Moreover, by obtaining students' FAUNet credentials, Defendants gained unauthorized access to FAU's computer network and systems, which contain students' private and confidential information such as financial information as well as FAU's proprietary business information.

6.      Defendants used the students' FAUNet credentials to improperly access FAU's network and systems, and also improperly sent unsolicited commercial emails to other students marketing Defendants' tutoring services that falsely stated that they came from the students who provided their credentials to Defendants.

7.      FAU seeks injunctive relief and damages against Defendants' trademark and trade dress infringement, false designation of origin, and unfair competition, as the entire course of Defendants' conduct demonstrates their intent to trade on and reap the benefit of FAU's long-established reputation and goodwill through years of innovation in the marketing and supply of quality services.

105490570.v3

8.      FAU further seeks injunctive relief and damages against Defendants' violations of the Computer Fraud and Abuse Act and related state laws, and damages for Defendants' tortious interference with FAU's business relationships.

9.      Defendants should be enjoined from continuing their wrongful behavior, and prohibited from using the Infringing Marks in connection with their tutoring services or otherwise causing consumer confusion as to the source of their services.

## PARTIES, JURISDICTION, AND VENUE

10.     The FAU Board of Trustees is a public body corporate with all of the powers of a corporation and the governing body of FAU.

11.     FAU is a public university and member of the state university system of Florida with its main campus at 777 Glades Road, Admin, 295, Boca Raton, Florida 33431.  FAU has been in existence since 1960.

12.     Parsont is an individual citizen of and domiciled in Palm Beach County, Florida.

13.     Owl Tutoring is an inactive Florida corporation with its principal place of business at 101 E Camino Real, Apt. 914, Boca Raton, Florida 33432.

14.     Parsont is the incorporator of Owl Tutoring, Inc., f/k/a Neil's Owl Tutoring, Inc. ("Owl Tutoring").  While Owl Tutoring was an active corporation, Parsont was at all times the sole officer and director.

15.     Parsont is and has at all times been the moving, active, and conscious force behind Owl Tutoring's infringing conduct, as well as a direct participant in the infringing activity.

16.     FAU's claims arise under the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq., the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the statutory and common laws of the State of Florida.  This Court has jurisdiction over the subject matter of

105490570.v3

this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

17.     This Court has personal jurisdiction over Defendant Owl Tutoring, who has purposefully availed itself of the laws of the State of Florida, because Owl Tutoring is incorporated in Florida, has its principal place of business in Palm Beach County, Florida, markets and sells services utilizing the Infringing Marks within the State of Florida and on the internet, and accessed FAU's computer systems located in this judicial district.

18.     This Court has personal jurisdiction over Defendant Parsont, who has purposefully availed himself of the laws of the State of Florida, because he is a citizen of and domiciled in Florida, markets and sells services utilizing the Infringing Marks within the State of Florida and on the internet, and accessed FAU's computers systems located in this judicial district.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside within this District and a substantial part of the events giving rise to the claims occurred within this District.

## FACTUAL ALLEGATIONS

A.     **FAU's Trademark and Trade Dress Rights**

20.     For over fifty years, FAU has provided world-class teaching and research faculty to students through ten colleges and has become a highly recognized state university.  FAU has expended substantial resources to build a strong brand around the Marks, including marketing FAU's products and services throughout the United States and the world under its Marks in newspapers, in brochures, on TV and radio, on billboards, through attendance at college fairs, and via its website located at www.fau.edu, as well as various other media, to the point that the Marks are now strongly associated with FAU's services.  As a result, FAU has developed extremely valuable goodwill in its Marks, and has set a standard for quality of its services.

4

105490570.v3

21.     FAU offers various educational services, including University level tutoring services.  In fact, in addition to FAU's other tutoring services, FAU offers a free volunteer tutoring program known as "Owl-to-Owl" tutoring as part of its brand.

22.     FAU uses a red, blue, and silver color scheme to identify FAU's services, and to distinguish them from those offered by others.  FAU's color scheme is non-functional and distinctive, and through continuous use, has come to be uniquely associated with FAU.  FAU's color scheme acts as a source-identifier for FAU.

23.     FAU's common law trade dress rights in its color scheme date back to 1964 when it first began using the trade dress or a substantially similar trade dress.

24.     FAU has also continuously used the word "Owls" and a depiction of an owl to identify FAU's services, and to distinguish them from those offered by others.  The word "Owls" and/or the depiction of an owl, especially when used in connection with FAU's color scheme, have come to be uniquely associated with FAU and act as a source-identifier for FAU.

25.     Since FAU has been using the word "Owls" and the depiction of an owl to identify its services since 1964, it has common law trademark rights dating back to that date.

26.     Moreover, the service mark depicted below was registered by FAU in the United States Patent and Trademark Office on March 13, 2007, under Registration No. 3,218,666:



A copy of the registration is attached hereto as **Exhibit 1**.  The trademark and the registration of the trademark have always been, and still are, owned by FAU.  Under the provisions of Section 15 of the Lanham Trademark Act, 15 U.S.C. § 1065, FAU's exclusive right to use the mark in commerce has become incontestable.

105490570.v3

27.     The service mark depicted below was also registered by FAU in the United States

Patent and Trademark Office on May 16, 2017, under Registration No. 5,203,293:



A copy of the registration is attached hereto as **Exhibit 2**.  The trademark and the registration of

the trademark have always been, and still are, owned by FAU.

28.     The service mark "Florida Atlantic Owls" was also registered by FAU in the United

States Patent and Trademark Office on January 3, 2017, under Registration No. 5,114,651.  A copy

of the registration is attached hereto as **Exhibit 3**.   The trademark and the registration of the

trademark have always been, and still are, owned by FAU.

29.     Representative samples of FAU's use of the Marks are shown below and attached

as **Composite Exhibit 4**:



105490570.v3





105490570.v3

30.     As a result of its widespread, continuous, and exclusive use and promotion of the Marks to identify its services and FAU as their source, FAU owns and holds valid and subsisting federal statutory and common law rights to the Marks.

31.     FAU's Marks are distinctive to both the consuming public and FAU's trade.

32.     Because of the extensive and substantial advertising and marketing of its Marks, and the maintenance of premium quality standards relating to the services offered under the brand, the Marks are widely and favorably known to exclusively identify the sole source of the services offered by FAU and signify the high quality of the services designated by the Marks.  The Marks have acquired incalculable distinction, reputation, and goodwill value belonging exclusively to FAU.

**B.     Defendants' Infringing Acts**

33.     Defendants' offer private tutoring services for University level courses, including specific courses offered by FAU.  Defendants have adopted the word "Owl" in their company name "Owl Tutoring" and domain name: www.owltutoring.com.  Defendants have also adopted a red, blue, and silver color scheme identical, or confusingly similar, to FAU's color scheme, which Defendants use on their website, marketing and promotional materials, and uniforms.  Moreover, Defendants' marketing and promotional materials contain a confusingly similar depiction of an owl.  Below are side-by-side images of FAU's and Owl Tutoring's mobile websites:

105490570.v3





34.     Upon information and belief, Defendants intentionally copied FAU's color scheme, selected the name "Owl Tutoring" for their competing company, adopted the domain name www.owltutoring.com, and copied a substantially similar owl depiction, all of which closely resemble FAU's Marks, to evoke similar commercial impressions and trade on FAU's reputation, goodwill, and distinction.

35.     Defendants operate within blocks of FAU, offer identical or similar tutoring services to FAU, and advertise and market to FAU students.  Specifically, Defendants send mass email solicitations to FAU students, either directly or by improperly obtaining access to students' FAU accounts, using their FAU email addresses, to offer tutoring services for FAU specific courses, and identify FAU courses by name and number in their advertisements.  Representative

9

samples of Defendants' use of the Infringing Marks and targeted advertisement and marketing efforts to FAU students is shown below and attached as **Composite Exhibit 5**:



36.    Representative samples of Defendants' use of the Infringing Marks in connection with advertisements specifically using FAU course numbers are shown below and attached as **Composite Exhibit 6**:

10





## ACG 2021 - Principles of Financial Accounting

### VIDEO PLAY LIST

Description     Support Files

| | |
|---|---|
| ▶ Chapter 1 FREE | 1h 56m 8s |
| ▶ Chapter 2 | 1h 14m 24s |
| ▶ Chapter 3 | 1h 52m 26s |
| ▶ EXAM 1 | 1h 49m 13s |
| ▶ Chapter 4 | 1h 50m 48s |
| ▶ Chapter 6 | 1h 25m 23s |
| ▶ EXAM 2 | 1h 5m 51s |
| ▶ Chapter 7 | 1h 54m 53s |
| ▶ Chapter 8 | 2h 11m 32s |
| ▶ Chapter 9 | 1h 23m 5s |
| ▶ EXAM 3 | 1h 41m 55s |
| ▶ Chapter 10 | 2h 9m 53s |
| ▶ Chapter 12 | 1h 5m 2s |
| ▶ Chapter 13 | 1h 14m 3s |
| ▶ FINAL Urquhart | 1h 41m 54s |

The material is customized to **FAU Professors** and based off past exams and homework. If you are taking a different professor, the exam videos will match but the homework may not. Send us a message with your professor and we will verify and set you up with a promocode if there is not a perfect match to your professor's material.

**Homework Videos** These videos help you understand how to solve your homework problems. They include conceptual background information and easy to follow step-by-step processes.

**Exam Videos** These videos include about 30 sample questions per chapter. They are a mix of the different variations you can expect to see on your actual exam. These problems are the same structure, format and math process as your actual exam differing only in numbers, company names and word order. Thus, understanding and mastering these problems is a virtual guarantee of success on your exam. Extra notes are also included with explanations of the terms and concepts matching exam style questions as opposed to just textbook definitions.

Complete Course    **save 69%**

# $169.99

**BUY COMPLETE COURSE**

Have a promo code?

Videos: 158
Time: 24 hours 36 minutes
Support Files: 9

### TESTIMONIALS

★★★★★

*"Great videos, super clear and helpful. As a returning college student, I find these extra resources very valuable. The explanations were*



37.     Further causing confusion among consumers, Defendants began offering through Owl Tutoring's website a "Study Feed" portal **only for and accessible by FAU students** using their FAU email addresses where students are solicited to post their FAU class files and notes, which further misleads consumers as to Defendants' association or affiliation with FAU. Screenshots and clips from Owl Tutoring's webpage (https://owltutoring.com/welcome-to-studyfeed/) are shown below and attached as **Composite Exhibit 7**:

105490570.v3





## SHARE FILES AND NOTES

Post files and notes to share with your classmates. Bonus - download professional notes created by our expert tutors



105490570.v3





38.    In connection with their "Study Feed" portal, Defendants obtained FAU students' private and unique FAUNet IDs **and passwords** used to access FAU's computer network and learning management system.

39.    To make matters worse, Defendants have been offering FAU students a promotional discount in exchange for disclosing their FAUNet credentials as shown below and attached as **Exhibit 8**:



40.     By requiring FAU students to enter their unique FAUNet credentials to gain access to Defendants' "Study Feed" portal and receive a discount on Defendants' tutoring services, Defendants have wrongfully represented that they are associated or affiliated with FAU and caused confusion among consumers that Defendants are in fact associated or affiliated with FAU.

41.     Defendants' unauthorized use of the Infringing Marks in this manner has caused confusion, mistake, and deception among consumers, particularly college students, as to the source, association, affiliation, or origin of Defendants' services.

**C.     Defendants' Unauthorized Access of FAU's Computers**

42.     FAU controls access to its computers, computer networks, learning management system, and data (collectively, "Computers") by providing authorized users with unique usernames and passwords for authentication, security, and privacy purposes.

43.     To access FAU's Computers, a person must login by entering his or her assigned username and password, which are unique to each specific authorized user.  Only persons who

have been granted access by FAU are permitted to access and use FAU's Computers, and only for the limited educational or research purpose for which access was given.

44.      FAU's policies specifically prohibit an authorized user from sharing his or her unique password, known as a FAUNet ID password, with any other person or otherwise sharing access to their FAU provided accounts.  In fact, FAU's policies explicitly state that FAUNet ID passwords  "**are treated as secrets** that should only be known by the individual to which the NetID was assigned." *See* FAU's Acceptable Use of Technology Resources Policy, emphasis added, attached hereto as **Exhibit "9."**

45.       Defendants are well aware of FAU's policies, as Parsont is a former student of FAU.

46.      By wrongfully obtaining FAU students' credentials, Defendants have direct access to FAU's Computers, which contain FAU's proprietary and confidential information only available to students enrolled in specific courses, as well as **students' private and sensitive personal information** including medical, financial, and academic information that FAU maintains confidential and protected from disclosure.

47.      Indeed, Defendants have used students' credentials to gain unauthorized access to FAU's Computers and send mass marketing emails **from the students' email accounts** offering Defendants' services to the students' contacts using information and means that are only available through FAU's Computers.  Defendants misrepresent that the emails come directly from the students whose accounts have been wrongfully accessed.

48.      There is no legitimate reason for Defendants to require students to disclose their FAUNet credentials, and thus, Defendants' purpose for doing so can only be to cause confusion

among consumers as to the association or affiliation of Defendants with FAU and improperly obtain access to FAU's Computers and proprietary information.

**D.      Parsont's Student Code of Conduct Violations and Other Wrongful Behavior**

49.     From 2001 through May 2008, Parsont was an undergraduate student at FAU.

50.     In 2009, Parsont began the MBA program at FAU.

51.     On or around September 30, 2013, it came to FAU's attention that Defendants sent an unauthorized email solicitation to FAU College of Business students.  In the solicitation, Defendants represented that Owl Tutoring was affiliated with FAU.   FAU opened a case and investigated whether the solicitation was a violation of the Student Code of Conduct.  In order to resolve the case, FAU negotiated a settlement with Parsont that provided the following:

>   a.   Parsont and Owl Tutoring staff would cease to enter or approach any classroom to present information on Owl Tutoring services.
>
>   b.   Parsont and Owl Tutoring staff would cease to send out mass emails to FAU students via Google web interface or other means.
>
>   c.   Owl Tutoring staff would only send emails to FAU students who had used their services in the past and would include an "opt out" option in every email.
>
>   d.   Defendants' activities and advertisements were not authorized by FAU. Defendants were to immediately cease all unauthorized business and solicitation on FAU property.
>
>   e.   All Owl Tutoring advertisements and solicitations were to clearly identify that the company was not associated, affiliated or endorsed by FAU.

52.     Defendants then began utilizing other students to send unauthorized solicitations and advertisements for Owl Tutoring to FAU students via FAU email addresses in violation of FAU's Student Code of Conduct.

53.     In early 2016, FAU learned that Defendants were again sending unauthorized solicitations and advertisements for Owl Tutoring to FAU College of Business students via FAU

17

email addresses, as well as soliciting FAU students and faculty to promote Owl Tutoring. Defendants were also soliciting students and passing out marketing materials on campus.

54.     FAU opened another case and Parsont admitted to violating three sections of the Student Code of Conduct, including noncompliance with written or oral requests or orders of authorized university officials or law enforcement officers in the performance of their duties and posting of commercial advertising or engaging in commercial activity without appropriate authorization.  After admitting responsibility, Parsont was placed on student conduct probation from November 1, 2016 through November 1, 2018.  Parsont was also required to complete twenty-five hours of community service, participate in an ethical decision-making seminar, and pay a $100 fee.  A copy of the Notice of Decision and Sanctions letter, Ethical Decision Making Seminar Attendance & Payment Agreement, and community service log are attached hereto as **Composite Exhibit 10**.

**E.     Actual Consumer Confusion**

55.     On December 5, 2016, FAU was contacted by a student's father to report an incident where his daughter was allegedly groped and inappropriately touched by her tutor, Parsont, during a tutoring session at Owl Tutoring.  The father was upset and reported the incident to FAU because *he and his daughter both believed that Owl Tutoring was affiliated with FAU*.

56.     The student learned of Defendants' services through their mass email solicitations sent to her FAU email account in violation of the Mutual Agreement and Student Code of Conduct. When she received the solicitations, and at all material times thereafter, the student believed that Defendants were affiliated with FAU due to their use of the name "Owl Tutoring" and the fact that the solicitations were sent directly to her FAU email account, related to a specific FAU course, and attached notes and tutoring videos for upcoming exams.

57.     In response to this unsolicited email, in November 2016, the student arranged for a private tutoring session with Parsont from Owl Tutoring in preparation for an upcoming final exam in one of her accounting courses.  On December 2, 2016, during a private tutoring session at Owl Tutoring, Parsont reportedly positioned himself to block the student's ability to exit the room and then inappropriately massaged her shoulders and placed his hands inside her shirt without her consent.  When the student tried to stop him, Parsont allegedly told her to let him massage the front or it would be "uneven".  According to the student, she ended the tutoring session early and hurried out of the Owl Tutoring office with Parsont trailing behind her out of the building.

58.     FAU sent numerous emails and letters to Parsont requesting a meeting to discuss the incident.  However, Parsont graduated from FAU's MBA program in December 2016 and was no longer a student.  Thus, Parsont declined FAU's request for a meeting and FAU had no jurisdiction to compel him to appear.  FAU placed a hold on Parsont's student account that would require him to resolve the charges for violation of the Student Code of Conduct arising from this incident prior to reenrollment.

59.     In light of the seriousness of the allegations and reported consumer confusion, FAU demanded that Defendants immediately discontinue all use of the Infringing Marks and transfer the domain name www.owltutoring.com to FAU.

60.     Despite FAU's demand, Defendants continue to use the Infringing Marks, including the domain name www.owltutoring.com, in connection with the promotion, advertising, and sale of their services.

61.     Defendants' conduct is detrimental to the local student population.  The students are confused and misled into believing that Defendants are associated or affiliated with FAU by their use of the Infringing Marks and decide to utilize the services offered by Defendants relying

105490570.v3

on the reputation of FAU.  Furthermore, the students are wrongfully induced into disclosing their private FAUNet ID and passwords to Defendants by which Defendants obtain access to, among other things, the students' private medical, financial, and academic information.

62.     Indeed, Defendants admit and acknowledge that consumer confusion exists as to the association or affiliation between FAU and Defendants on Owl Tutoring's website.  The first question on Owl Tutoring's "FAQs" webpage (https://owltutoring.com/frequently-asked-questions/) is: "Are you affiliated with FAU?"  A copy of the webpage is attached hereto as **Exhibit 11**.  Rather than prominently display the lack of affiliation between Defendants and FAU on Owl Tutoring's main webpage in an attempt to avoid confusion, this information is buried and only displayed on Owl Tutoring's "FAQs" webpage.

63.     Further, a Google search for "Owl-to-Owl tutoring" results in hits for both FAU's Owl-to-Owl Volunteer Tutoring program webpage and Owl Tutoring's webpage.  A copy of the Google search results is shown below and attached as **Exhibit 12**:



105490570.v3

64.     Defendants are deliberately infringing upon the Marks with the purpose of evoking the standard and quality of services offered by FAU and to draw attention to Defendants' own tutoring services using FAU's goodwill, reputation and distinction to harm FAU, its Marks, and brand, and/or to mislead consumers as to Defendants' association or affiliation with FAU.

65.     Defendants' unauthorized and infringing acts have caused confusion, mistake, and deception among the relevant consuming public, as to the source or origin of Defendants' services, and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' services originate from, are associated or affiliated with, or are otherwise authorized by FAU.

**F.      Defendants' Behavior is Causing Ongoing Irreparable Harm**

66.     Defendants are blatantly and willfully attempting to compete unfairly with FAU by usurping its Marks and trying to pass off their services as being identical to, or affiliated with, FAU's services.   Defendants' use of the Infringing Marks therefore constitutes willful infringement.

67.     Defendants have traded on the goodwill of FAU, which FAU has obtained through the expenditure of significant time and resources over the past fifty plus years.  Defendants' use of the Infringing Marks is damaging and diminishing FAU's reputation.

68.     Defendants have blatantly sought to usurp FAU's goodwill by, *inter alia*, utilizing an intentionally copied color scheme, the name "Owl Tutoring", the domain name www.owltutoring.com, and a depiction of a confusingly similar owl to purposely portray their services as being identical, affiliated with and/or indistinguishable from those offered by FAU and creating the false appearance of association in order to bolster their own sales and/or market presence to FAU's detriment and expense.

69.     Furthermore, the harm associated with Defendants' wrongful conduct is, by its very nature, irreparable and FAU lacks an adequate remedy at law.

## FIRST CAUSE OF ACTION

### (Federal Trademark Infringement under 15. U.S.C. § 1114)

70.     FAU repeats and re-alleges the allegations in paragraphs 1 through 69 of the Complaint.

71.     FAU is the sole and exclusive owner of the federally-registered Marks for educational services at the University Level.

72.     The Marks, as used by FAU in connection with its services, are inherently distinctive and/or have acquired secondary meaning.

73.     FAU's United States Registration No. 3,218,666 for the trademark  is incontestable, and accordingly, it is conclusively presumed that the trademark is inherently distinctive and/or has acquired secondary meaning under 15 U.S.C. § 1115(b).

74.     Defendants have knowingly used and are continuing to use the Infringing Marks in providing identical or substantially similar services to those offered by FAU.

75.     Defendants' use of the Infringing Marks has been without FAU's consent.

76.     Defendants' unauthorized use of the Infringing Marks in commerce as alleged herein has and is likely to continue to cause confusion and deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe that Defendants' services are offered for sale, authorized, endorsed, or sponsored by FAU, or that Defendants are in some way affiliated with, associated with, or sponsored by FAU.

77.     Defendants' conduct therefore constitutes trademark infringement in violation of 15 U.S.C. § 1114(1).

105490570.v3

78.     Defendants have committed the foregoing acts of infringement with full knowledge of FAU's prior rights in the Marks and with the willful intent to cause confusion and trade on FAU's goodwill and reputation.

79.     Defendants' conduct is causing immediate and irreparable harm and injury to FAU, and to its goodwill and reputation, and will continue to damage FAU and confuse the public unless enjoined by this Court.  FAU has no adequate remedy at law.

80.     As a direct and proximate result of Defendants' trademark infringement, FAU is entitled to injunctive relief and an award of damages in an amount to be determined at trial, together with costs and prejudgment and post-judgment interest.

## SECOND CAUSE OF ACTION

**(Federal Trademark and Trade Dress Infringement, False Designation of Origin and Unfair Competition under the Lanham Act (15 U.S.C. § 1125(a)(1)(A)))**

81.     FAU repeats and re-alleges the allegations in paragraphs 1 through 69 of the Complaint.

82.     FAU is the sole owner of the Marks, which are non-functional and inherently distinctive and/or have acquired secondary meaning.

83.     Defendants have knowingly used and are continuing to use the Infringing Marks in commerce in providing identical or substantially similar services to those offered by FAU, and in close proximity to and in direct competition with FAU.

84.      Defendants' unauthorized use of the Infringing Marks in commerce has and is likely to continue to cause confusion or deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe that Defendants' services are sold, authorized, endorsed, or sponsored by FAU, or that Defendants are in some way affiliated with or sponsored by FAU.

105490570.v3

85.     Defendants' unauthorized use of the Infringing Marks constitutes use of a false designation of origin and misleading description and representation of fact.

86.      Defendants have committed the foregoing acts willfully and with the intent to benefit from the reputation and goodwill of FAU and its Marks and cause confusion, mistake or deception as to the affiliation, connection, or association of Defendants with FAU.

87.     Defendants' conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

88.     As a direct and proximate result of Defendants' conduct, FAU has suffered and will continue to suffer damage to its business for which FAU is entitled to monetary relief.

89.     Defendants have caused, are causing, and unless such acts are enjoined by the Court, will continue to cause irreparable harm and injury to FAU, and to its reputation and goodwill, for which there is no adequate remedy at law, and for which FAU is entitled to injunctive relief.

90.     Unless enjoined by this Court, Defendants will continue to use the Infringing Marks to confuse and mislead consumers.

91.     FAU is entitled to recover from Defendants the actual damages that FAU sustained and is likely to sustain as a result of Defendants' unlawful acts, as well as Defendants' profits, together with prejudgment and post-judgment interest.

## **THIRD CAUSE OF ACTION**

### **(Common Law Trademark and Trade Dress Infringement and Unfair Competition)**

92.     FAU repeats and re-alleges the allegations in paragraphs 1 through 69 of the Complaint.

105490570.v3

93.     By way of FAU's continuous and near exclusive use of the Marks within the State of Florida and nationally from at least as early as 1964, the Marks constitute valid and legally protectable trademarks.

94.     FAU holds an undivided interest in all right and title in and to the Marks in the United States.

95.     Defendants have adopted and used in this District the Infringing Marks for competing educational services.

96.     Defendants' use of the Infringing Marks has caused and is likely to continue to cause confusion among consumers.

97.     Further, Defendants' business conduct is contrary to honest, ethical and moral practices.  As such, Defendants are also liable under the laws of Florida for unfair competition.

98.     Defendants have infringed FAU's Marks as alleged with the intent to deceive the public into believing that services offered and sold by Defendants are approved by, sponsored by or affiliated with FAU.  Defendants' acts were committed with the intent to pass off Defendants' services as the services of FAU, and with the intent to deceive and defraud the public.

99.     As a direct and proximate result of Defendants' trademark infringement and unfair competition, FAU has incurred substantial damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Tortious Interference with Business Relationships

100.    FAU repeats and re-alleges the allegations in paragraphs 1 through 69 of the Complaint.

101.    Defendants knew of FAU's business relations with its students and former students.

102.    Defendants intentionally and unjustifiably interfered with FAU's business relations with its students and former students by improperly requesting their FAUNet IDs and passwords and using this information to access their contacts to distribute Defendants' marketing and promotional material to other students and solicit other students to utilize the Defendants' services in violation of FAU's policies, the Student Code of Conduct, and their agreements with FAU for Defendants' own commercial benefit.

103.    Defendants have induced or caused, and will continue to induce or cause, FAU's students and former students to violate their business relationships with FAU.

104.    By virtue of Defendants' tortious interference, FAU has been and will continue to be irreparably harmed.

105.    As a direct and proximate result of Defendants' conduct, FAU has incurred substantial damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**Violation of Computer Fraud and Abuse Act ("CFAA Act"), 18 U.S.C. § 1030**

106.    FAU repeats and re-alleges the allegations in paragraphs 1 through 69 of the Complaint.

107.    FAU's Computers are used in and affect interstate commerce and communication, and are therefore protected computers under 18 U.S.C. § 1030(e).

108.    Defendants have intentionally, knowingly and/or with intent to defraud accessed FAU's Computers either without authorization, or in excess of their authorization, and/or caused the transmission of a program, information, code, or command without authorization to FAU's Computers.

105490570.v3

109.    Once Defendants improperly accessed FAU's Computers, they obtained proprietary and valuable information from FAU's protected computers including, among other things, FAU students' contact lists and the ability to send messages to those contacts.  Moreover, Defendants obtained the ability to access students' medical, financial, and academic information, as well as FAU course materials and other proprietary information.

110.    Defendants further have used FAU's proprietary and valuable information to send unauthorized emails advertising, marketing, promoting, and offering Defendants' services from FAU student accounts, surreptitiously and falsely representing that the emails came directly from students.

111.    Defendants were not authorized by FAU to make use of its Computers and students' credentials and/or accounts.

112.    By engaging in the conduct set forth herein, Defendants have caused or will cause FAU to incur losses in excess of $5,000.00 in value during a one-year period related to the investigation of and cost of responding to the conduct.

113.    Pursuant to 18 U.S.C. § 1030, FAU is entitled to compensatory damages and other equitable relief.

## SIXTH CAUSE OF ACTION

### Violation of Florida's Computer Abuse and Data Recovery Act ("CADRA"), Fla. Stat. § 668.803

114.    FAU repeats and re-alleges the allegations in paragraphs 1 through 69 of the Complaint.

115.    FAU's Computers are used in connection with the operation of a university and store information, programs, or code in connection with the operation of the university that can be accessed only by a password authentication system, which constitutes a technological access

barrier as defined under Fla. Stat. § 668.802(7), and are therefore protected computers as defined under Fla. Stat. § 668.802(6).

116.    FAU is the owner of the Computers, and the data and information stored in the Computers, and uses the information in connection with the operation of its university.

117.    Defendants knowingly, and with the intent to cause harm or loss, obtained information from FAU's Computers and/or caused the transmission of a program, code, or command to FAU's Computers without authorization, and as a result, caused harm or loss to FAU.

118.    Once Defendants improperly accessed FAU's Computers, they obtained proprietary and valuable information from FAU's protected computers including, among other things, FAU students' contact lists and the ability to send messages to those contacts.   Moreover, Defendants obtained the ability to access students' medical, financial, and academic information, as well as FAU course materials and other proprietary information.

119.    Defendants further have used FAU's proprietary and valuable information to send unauthorized emails advertising, marketing, promoting, and offering Defendants' services from FAU student accounts, surreptitiously and falsely representing that the emails came directly from students.

120.    Defendants were not authorized by FAU to make use of its Computers and students' credentials and/or accounts in this manner.

121.    By engaging in the conduct set forth herein, Defendants have caused FAU to incur losses related to the investigation of and cost of responding to the conduct.

122.    Pursuant to Fla. Stat. § 668.804, FAU is entitled to injunctive relief to prevent the Defendants from violating Fla. Stat. § 668.803 in the future.

105490570.v3

123.    FAU is also entitled to recover actual damages, the Defendants' profits, the misappropriated information, program, or code, and all copies thereof, and its reasonable attorneys' fees incurred in bringing this action.

### SEVENTH CAUSE OF ACTION

### Permanent Injunction

124.    FAU repeats and re-alleges the allegations in paragraphs 1 through 123 of the Complaint.

125.    FAU has and will continue to suffer imminent harm and irreparable injury if Defendants are not enjoined from using the Infringing Marks in the manner described herein and accessing FAU's Computers without authorization.

126.    There is no dispute that Defendants intended to engage in the very activity that FAU seeks to enjoin.  Specifically, Defendants are blatantly and willfully copying the Marks, or confusingly similar marks, to appear as if their services are identical, indistinguishable from, or related to those services offered by FAU to consumers.

127.    These actions are readily observable since both FAU and Defendants offer services in the same city and to the same category of consumers, and Defendants blatantly target FAU's student population.  Therefore, there is no conjecture involved in satisfying the imminent harm requirement.

128.    Moreover, Defendants are soliciting FAU students' unique credentials to gain access to FAU's Computers, and intentionally and knowingly accessing FAU's Computers without authorization to obtain proprietary and valuable information from FAU's Computers and cause harm or loss to FAU, which is causing irreparable injury to FAU.  As this time, FAU does not know the extent of the information misappropriated by Defendants.

105490570.v3

129.     FAU has been irreparably injured by Defendants' conduct in a manner that cannot be accurately measured and for which monetary damages are inadequate.   Accordingly, an injunction is necessary to prevent continuing harm.

130.     Monetary damages are inadequate to compensate FAU for the unquantifiable injury to its reputation, goodwill, and brand caused by Defendants' infringing acts and wrongful conduct. Defendants are currently selling services in the market using the Infringing Marks.  The continuous damage to FAU includes not only lost profits, but also lost goodwill and reputation.  Thus, FAU's damages are not ascertainable or easily calculated.

131.     Considering the balance of the hardships between FAU and Defendants, a remedy in equity is warranted.  The threatened harm to FAU outweighs the harm that an injunction would inflict on Defendants because it is FAU who will ultimately suffer if Defendants are permitted to continue their damaging efforts.  Any harm resulting to Defendants would be the prevention of unjust enrichment through their unlawful actions.

132.     Issuing an injunction would not adversely affect the public interest and public policy, and would in fact be in the best interests of the public, especially the students at FAU given the actual confusion caused by Defendants' conduct, alleged inappropriate conduct of Defendants, and and wrongful access of FAU students' accounts containing private medical, financial, and academic information.

133.     For these reasons, FAU asks the Court to set its request for injunctive relief for a full trial on the issues and, after the trial, to issue a permanent injunction against Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, the Florida Atlantic University Board of Trustees, respectfully requests that this Court enter judgment in its favor against Defendants, Neil Parsont and Owl Tutoring, Inc., and seeks the following relief:

105490570.v3

(a)  A permanent injunction barring Defendants, or any person or entity acting on their behalf, in concert with them, or through which they act, from:

    i.   Making any use of the FAU color scheme, the name "Owl Tutoring", the domain name www.owltutoring.com, and the depiction of an owl in connection with their tutoring services;

    ii.   Engaging in any activity that infringes FAU's rights in its Marks;

    iii.   Making or displaying any statement, representation, or depiction that is likely to lead the public to believe that Defendants' services are in any manner approved, endorsed, licensed, sponsored, or authorized by or associated, affiliated, or otherwise connected with FAU; and

    iv.   Unfairly competing with FAU;

(b)  A permanent injunction barring Defendants from further accessing FAU's Computers;

(c)  An order requiring an accounting and return of all proprietary and/or misappropriated information unlawfully obtained by Defendants, including student Credentials, belonging to FAU;

(d)  Compensatory damages and/or statutory damages including, but not limited to: (i) lost profits; (ii) the disgorgement of all profits and revenues received by Defendants; and (iii) to the extent calculable, damages for reputational damage, lost revenue, loss of goodwill, corrective advertising, and other damages;

(e)  Attorneys' fees pursuant to Fla. Stat. § 668.804;

31

(f)     Interest and costs; and

(g)     Such other relief to FAU as this Court deems appropriate, just, and proper.

Dated:  December 9, 2019

Fox Rothschild LLP
777 South Flagler Drive
Suite 1700 West Tower
West Palm Beach, FL 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602

By:     _s/Megan A. McNamara_
        Amy S. Rubin
        Florida Bar No: 476048
        arubin@foxrothschild.com
        Megan A. McNamara
        Florida Bar No: 112636
        mmcnamara@foxrothschild.com

*Attorneys for Plaintiff, the Florida Atlantic
University Board of Trustees*

32